# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8372 | **DATE** | 5/8/2003 |
| **CASE TITLE** | MS PRODUCE, INC. vs. BURGER KING CORPORTION | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____ .

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Status hearing held and continued to 6/12/03 at 9:00 a.m. Enter Memorandum Opinion And Order. Burger King Corporation's and Restaurant Services, Inc.'s motions to dismiss are denied. Defendants' answer to be filed by 5/29/03. Parties to exchange rule 26 disclosures by 5/29/03. Enter stipulated protective order regarding confidential information.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 1 2 2003 | | 26 |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| LV | courtroom deputy's initials | | | date mailed notice | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MS PRODUCE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 02 C 8372 |
| v. | ) | |
| | ) | Honorable John W. Darrah |
| BURGER KING CORPORATION; | ) | |
| RESTAURANT SERVICES, INC.; and | ) | |
| REINHART FOODSERVICE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

MAY 1 2 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff, MS Produce, Inc. ("Plaintiff"), filed a three-count complaint against Defendants,

Burger King Corporation ("Burger King"); Restaurant Services, Inc. ("RSI"); and Reinhart

Foodservice, Inc. ("Reinhart"), alleging tortious interference with contract (Count I), tortious

interference with business relationships (Count II), and conspiracy to tortiously interfere (Count III).

Burger King and RSI move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the

complaint. For the reasons that follow, Burger King's and RSI's Motions to Dismiss are denied.

## LEGAL STANDARD

When considering a motion to dismiss, well-pleaded allegations in the complaint are accepted

as true. *Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1319 (7th Cir. 1997). Any ambiguities

in the complaint are construed in favor of the plaintiff. *Kelly v. Crosfield Catalysts*, 135 F.3d 1202,

1205 (7th Cir. 1998). Dismissal is proper only when it appears beyond doubt that Plaintiff can prove

no set of facts to support the allegations in his or her claim. *Strasburger v. Board of Education*, 143

F.3d 351, 359 (7th Cir. 1998).

"Although the Federal Rules of Civil Procedure do not require a plaintiff 'to set out in detail

the facts upon which he bases his claim,'. . . he must 'set out sufficient factual matter to outline the elements of his cause of action or claim, proof of which is essential to his recovery.'" *Benson v. Cady*, 761 F.2d 335, 338 (7th Cir. 1985) (internal citation omitted). A complaint will not avoid dismissal if it contains "bare legal conclusions" absent facts outlining the basis of the claims. *Perkins v. Silverstein*, 939 F.2d 463, 467 (7th Cir. 1991).

## BACKGROUND

For purposes of these Motions to Dismiss, the following allegations are taken as true.

Plaintiff is an Illinois corporation with its principal place of business in Lyons, Illinois. Burger King is a Florida corporation with its principal place of business in Miami, Florida. RSI is a Delaware corporation with its principal place of business in Coral Gables, Florida. Reinhart is a Wisconsin corporation with its principal place of business in LaCrosse, Wisconsin.

Burger King is one the largest restaurant operators in the world. RSI was formed by Burger King and Burger King franchisees in 1991 to act as their exclusive purchasing agent for all Burger King restaurants in the United States. RSI negotiates contracts annually with a select number of Burger King-approved vendors and distributors. These approved vendors sell approved products at approved prices to approved distributors. The approved distributors approved products in various areas of the country to Burger King restaurants at final selling prices approved by Burger King and RSI. One of the approved products that is sold to Burger King franchisees is produce, which includes onions, lettuce and tomatoes.

Reinhart is a Burger King approved distributor who sells products to most of the Burger King restaurants owned and operated by AmeriKing, a Delaware corporation that is one of the largest franchisees of Burger King restaurants.

Plaintiff is a wholesale produce distribution company. Beginning in or around 1999, Plaintiff's employees approached AmeriKing, introducing Plaintiff's produce program as a way to improve AmeriKing's overall produce quality and service levels and provide significant savings. Beginning in 2000, Plaintiff's president, James J. Kubeck, discussed the produce program with Larry Jaro, the then-Chairman and Chief Executive Officer of AmeriKing. Kubeck told Jaro that the produce program would allow AmeriKing to share Plaintiff's profits by joint venturing in a non-produce procurement, distribution and pricing system, which would be developed after establishing its produce program at AmeriKing. In or around late 2000, Kubeck and Jaro began negotiating a contract.

In February 2001, Plaintiff received a trial contract[1] from AmeriKing, which provided for Plaintiff to supply produce to forty-one Chicagoland Burger King restaurants owned and operated by AmeriKing for three months. Subsequently, these restaurants reported produce of superior quality and better service at a cheaper price. Due to the favorable results of the trial contract, the trial contract was extended to a month-to-month arrangement.

At that time, Plaintiff was not an approved vendor. On or around May 1, 2001, AmeriKing informed Plaintiff that Plaintiff would receive Burger King's and RSI's approval if a Burger King sponsored and supervised inspection found Plaintiff's facility complied with Burger King/RSI regulations. On or around May 22, 2001, Ken Fittz, a Burger King employee, inspected Plaintiff's

---

[1]Many of the documents referred to in the complaint are not attached as exhibits. However, they are attached to Defendants' motions to dismiss. Documents attached to a motion to dismiss will be considered part of the pleadings if they are referred to in the complaint and are central to its claims. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). The complaint expressly refers to these documents; and, therefore, they will be considered part of the pleadings.

facility. Fittz stated that he did not want Plaintiff to receive Burger King/RSI approval. After the inspection, Fittz instructed Plaintiff to make approximately $10,000.00 worth of facility changes and further instructed Plaintiff to alter the way it received product recall protocols. Plaintiff made the changes.

After Fittz's inspection, Redi-Cut Foods, Inc., a Burger King/RSI-approved vendor, refused to do any business with Plaintiff due to its "non-approved" status; but Redi-Cut later admitted that it had been instructed by Burger King and RSI not to sell to Plaintiff, specifically mentioning Fittz by name. Due to Redi-Cut's refusal to do business with Plaintiff, Plaintiff incurred greater transportation costs to obtain its produce elsewhere as well as other unnecessary procurement and operational challenges. Additionally, Plaintiff was unable to purchase produce in boxes bearing the Burger King logo because it was not an approved distributor.

On August 12, 2001, Kubeck sent Jaro a letter, which stated that a new contract would be ready as soon as AmeriKing was prepared to sign it. On August 23, 2001, Jaro, on behalf of AmeriKing, entered into two contracts with Plaintiff, one entitled "MS Produce, Inc. Credit, Terms and Account Conditions Letter" and another styled simply "Agreement". The Credit, Terms and Account Conditions Letter stated (with the included emphasis):

> Pursuant to this Letter, the attached Agreement and Attachment A, which are incorporated herein, and subject to MS Produce, Inc. 1.) Attaining and maintaining an *approved distributor status* with Burger King Corporation, and 2.) AmeriKing-Burger King's positive performance evaluation of MS Produce, Inc.'s produce product/quality and 6A-3P deliver time service levels, MS Produce, Inc. will **exclusively** serve all AMERIKING-BURGER KING/CHICAGO, IL. AREA RESTAURANT locations between August 27, 2001 and December 31, 2005. This Letter, the attached Agreement and Attachment A, can be cancelled by either/both parties, at any time, for any reason(s), with ninety . . . Days written notice to the other party, and is binding upon both parties' successors, heirs and assigns. However, MS Produce, Inc. must attain and maintain an *approved distributor status*

-4-

with Burger King Corporation. In the event that MS Produce, Inc. does not attain, or attains and then loses its *approved distributor status* from Burger King Corporation, or does not perform to acceptable produce product/quality and 6A-3P delivery time service levels, AmeriKing-Burger King can cancel this Letter and the attached Agreement with twenty . . . days written notice to MS Produce, Inc. . . .

(RSI's Mem. Supp. Mot. Dismiss Ex. C) (footnote omitted). Plaintiff continued to serve AmeriKing's Chicagoland restaurants.

On August 31, 2001, Bruce Burnham, an employee of Burger King, informed Plaintiff in a letter that it had achieved approved distributor status. The August 31, 2001 letter noted that such approval (1) was limited to a twelve-month expanded test, beginning September 1, 2001; (2) required Plaintiff to "source" produce from suppliers in Burger King's Approved Brands List and to deliver the produce in boxes bearing the Burger King logo; and (3) required Plaintiff to participate in inspections of its facilities.

On September 7, 2001, Burnham sent another letter, which revoked Plaintiff's approved distributor status effective September 11, 2001. The September 7, 2001 letter stated that:

> [i]t has come to my attention that MS Produce has been soliciting business from Burger King franchised restaurants other than those owned by AmeriKing, Inc. These activities are in direct violation of the terms set forth in my August 31, 2001 letter to you which govern MS Produce's approval to distribute produce to certain Burger King restaurants on a limited test basis.

> Therefore, Burger King Corporation . . . has decided to place the produce distribution test on hold. Effective Tuesday September 11[th], MS Produce is no longer approved to distribute or sell produce to the Burger King restaurant system. [Burger King] will further evaluate whether to continue the produce test and notify you of its decision as soon as possible.

(Burger King's Mem. Supp. Mot. Dismiss Ex. D.) However, some of these franchisees had contacted Kubeck as early as 1999. The revocation of Plaintiff's approved distributor status occurred as a result of Reinhart's pressure on RSI to eliminate Reinhart's competitors.

When Kubeck contacted Burnham upon receiving the September 7, 2001 letter, it was made clear that "outside forces" and "inside bureaucrats" were seeking to interfere with Plaintiff's growth and its contract with AmeriKing. AmeriKing informed Plaintiff that it should continue to supply AmeriKing.

Hernando Manrique, apparently an AmeriKing employee, pursuant to instructions from Burger King, RSI and Reinhart, began to manufacture complaints against Plaintiff. When Plaintiff learned of the complaints, Kubeck attempted to contact Manrique to discuss them. Manrique ignored Kubeck.

On November 30, 2001, Manrique sent a letter stating, "This letter is to advise you of AmeriKing's election to terminate the Agreement effective December 20, 2001, as a result of, without limitation, MS Produce's failure to attain approved distributor status with Burger King . . . ." (*Id.* at Ex E.) When Kubeck contacted Jaro and told Jaro that termination of the contract would devastate Plaintiff when it had been doing a great job, Jaro admitted that there was "too much noise" from Burger King, RSI and Reinhart.

As a result of the termination of Plaintiff's contract with AmeriKing, Plaintiff laid off most of its staff and pared down its operations dramatically. Several deals, which Defendants were aware of, were lost as a result of the state of Plaintiff's affairs after AmeriKing terminated the contract.

## DISCUSSION

### Count 1

Burger King argues that Count I fails to allege a tortious interference with contract claim because there was no breach of the contract.

In order to state a tortious interference with contract claim, Plaintiff must allege "'(1) the

existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages.'" *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 154 (1989) (quoting *Prudential Ins. Co. v. Van Matre*, 158 Ill. App. 3d 298, 304 (1987)).

Count I realleges the previous allegations of the complaint. Count I alleges that (1) AmeriKing entered into a valid and binding agreement with Plaintiff on August 23, 2001; (2) Burger King, RSI and Reinhart were aware of that contract; (3) Burger King, RSI and Reinhart wrongfully and intentionally caused AmeriKing to breach the contract; (4) but for Burger King's, RSI's and Reinhart's interference, AmeriKing would have fulfilled its contract with Plaintiff; (5) Burger King's, RSI's and Reinhart's actions were willful, wanton and malicious; and (6) as a result, Plaintiff sustained $5,000,000.00 in lost profits. (Compl. ¶¶ 48-54.) The complaint alleges that Burger King revoked Plaintiff's "approved distributor status" to eliminate competitors of Reinhart and RSI in the produce market for Burger King restaurants in the Midwest. (Compl. ¶ 36.)

Count I adequately alleges a claim for tortious interference with contract. Count I alleges the existence of a valid and enforceable contract between Plaintiff and AmeriKing; that Burger King, RSI, and Reinhart were aware of the contract; that Burger King revoked Plaintiff's "approved distributor status" to eliminate Plaintiff as a competitor of Reinhart and RSI in the produce market for Burger King restaurants in the Midwest; that AmeriKing terminated the contract with Plaintiff as a result of Burger King's revocation of "approved distributor status"; and that Plaintiff was damaged. Count I alleges that Burger King's revocation of Plaintiff's "approved distributor status" was unjustified and done to induce AmeriKing to terminate the contract.

-7-

Moreover, Count I alleges that AmeriKing told Plaintiff to continue to perform under the contract despite Burger King's revocation of "approved distributor status" and that Plaintiff did indeed perform its obligations under the contract. This allegation reasonably supports the inference that AmeriKing orally modified the contract. *Czapla v. Commerz Futures, LLC*, 114 F. Supp. 2d 715, 719 (N.D. Ill. 2000) (noting that, under Illinois law, oral modifications are permissible and holding that complaint sufficiently alleged waiver of a contract provision requiring written modifications). Therefore, Plaintiff adequately alleges a claim for tortious interference with contract; and RSI's and Burger King's motions are denied on this ground.

Burger King and RSI also move to dismiss Count I, arguing that their conduct was privileged.

"[A]n individual may be privileged to interfere with a contract when he acts to protect a conflicting interest which is considered to be of equal or greater value than that accorded the contractual rights involved." *Langer v. Becker*, 176 Ill. App. 3d 745, 750 (1988). Courts consider the following factors in determining whether a defendant's conduct is privileged: (1) the nature of the defendant's conduct, (2) the defendant's motive, (3) the interests of the other with which the defendant's conduct interferes, (4) the interests sought to be advanced by the defendant, (5) the social interests in protecting the freedom of action of the defendant and the contractual interests of the other, (6) the proximity or remoteness of the defendant's conduct to the interference, and (7) the relations between the parties. *Langer*, 176 Ill. App. 3d at 750. If the defendant's conduct is privileged, the plaintiff bears the burden of pleading and proving that the defendant's conduct was unjustified or malicious. *HPI Health Care Servs., Inc.* 131 Ill. 2d at 156. To plead malice, a plaintiff must plead that the defendant's conduct was intentional and unjustified. *HPI Health Care Servs., Inc.*, 131 Ill. 2d at 157. "'In Illinois, the issue of whether a qualified privilege exists has been a

question of law for the court, and the issue of whether the privilege was abused has been a question of fact for the jury.'" *Zdeb v. Baxter Int'l, Inc.*, 297 Ill. App. 3d 622, 631 (1998).

At present, the record is insufficient for the Court to determine whether Burger King's or RSI's conduct was privileged. This issue is better resolved at a later stage in this litigation. However, even if Burger King and RSI were privileged to interfere in the contract between AmeriKing and Plaintiff, as was discussed above, the complaint adequately pleads that Burger King acted intentionally and without justification in revoking Plaintiff's "approved distributor status". The complaint also alleges that RSI, in response to pressure from Reinhart, pressured Burger King to revoke Plaintiff's "approved distributor status" in order to eliminate competitors in the produce market for Burger King restaurants in the Midwest. These allegations are sufficient to plead the requisite malice, and Burger King's and RSI's motions are denied on this ground.

### Count II

Count II alleges a claim for tortious interference with business relationships. In order to state a claim for interference with business relationships, Plaintiff must allege "'(1) [its] reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of . . . [P]laintiff's expectancy; (3) purposeful interference by the defendant that prevents . . . [P]laintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to . . . [P]laintiff resulting from such interference.'" *Int'l Marketing, Ltd. v. Archer-Daniels-Midland Co., Inc.*, 192 F.3d 724, 731 (7th Cir. 1999) (quoting *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 484 (1998)).

Count II realleges the previous allegations and further alleges that (1) Defendants were aware that AmeriKing and Plaintiff were involved in forming a joint venture which would result in the

formation of a company that would distribute products to AmeriKing restaurants and other restaurants; (2) Defendants were aware that the deal would enable Plaintiff to provide produce to other Burger King franchises; (3) Defendants were aware that Plaintiff had several other deals pending as a result of its current and prospective contracts with AmeriKing; (4) Defendants maliciously, wantonly, and willfully caused AmeriKing to breach its agreement with Plaintiff without any justification or privilege; and (5) Plaintiff sustained damages as a result of Defendants' conduct. (Compl. ¶¶ 55-60.)

Count II adequately pleads a claim for tortious interference with business relationships. "The tort requires 'an allegation of conduct directed by the defendant toward a third party through which the defendant purposely causes that third party not to enter into or continue with a prospective contractual relationship with the plaintiff.'" *Israeli Aircraft Indus., Ltd. v. Sanwa Bus. Credit Corp.*, 850 F. Supp. 686, 692-93 (N.D. Ill. 1993) (quoting *Westland v. Sero of New Haven, Inc.*, 601 F. Supp. 163, 166 (N.D. Ill. 1985)), *aff'd*, 16 F.3d 198 (7th Cir. 1994). Here, Count II, as well as the complaint as a whole, alleges that Burger King, in response to pressure from RSI and, indirectly, Reinhart, revoked Plaintiff's "approved distributor status" to eliminate competition. Count II also alleges that Burger King and RSI were aware of the pending venture between AmeriKing and Plaintiff. It can be reasonably inferred from the allegations in the complaint that Burger King revoked Plaintiff's "approved distributor status" in order to cause AmeriKing not to enter into the proposed joint venture with Plaintiff. Furthermore, Count II alleges that Plaintiff lost other business as a result of the breach by AmeriKing. Therefore, Count II adequately states a claim for tortious interference with business relationships; and Burger King's and RSI's motions are denied as to Count II.

-10-

## Count III

"Under Illinois law, 'civil conspiracy arises where two or more persons combine to accomplish by concerted action either a lawful purpose through unlawful means or an unlawful purpose through lawful means.'" *Israeli Aircraft Indus., Ltd.*, 850 F. Supp. at 693 (quoting *Belkow v. Celotex Corp.*, 722 F. Supp. 1547, 1550 (N.D. Ill. 1989)).

Count III realleges the previous allegations in the complaint and further alleges that Defendants "acted in concert to accomplish an unlawful purpose and/or a lawful purpose through unlawful means, namely to destroy [Plaintiff] and to remove it as a competitor"; as early as May 2001, Defendants willfully, wantonly and maliciously entered into unlawful contracts and engaged in an unlawful and fraudulent combination and conspiracy by interfering with Plaintiff's contracts and business relationships; and, as a result of Defendants' conduct, Plaintiff sustained damages. (Compl. ¶¶ 61-65.)

Count III adequately states a claim for civil conspiracy. As set out above, Counts I and II state claims for tortious interference with contract and tortious interference with business relationships. The allegations in the complaint reasonably support the inference that Burger King, RSI and Reinhart agreed to eliminate competitors in the produce market for Burger King restaurants in the Midwest and that they interfered with Plaintiff's contract and prospective contract with AmeriKing in furtherance of that agreement. Therefore, Burger King's and RSI's motions to dismiss are denied as to Count III.

## CONCLUSION

For the reasons stated herein, Burger King Corporation's and Restaurant Services, Inc.'s

Motions to Dismiss are denied.

**IT IS SO ORDERED.**

Date: _May 8, 2003_

John W. Darrah, Judge
United States District Court

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| **MS PRODUCE, INC.,** )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>**BURGER KING CORPORATION,** )<br>**RESTAURANT SERVICES, INC.,** )<br>and **REINHART FOODSERVICE, INC.,** )<br>)<br>Defendants. )<br>) | Case No. 02-C-8372<br><br>Judge John W. Darrah<br><br>Mag. Judge Morton Denlow |

RECEIVED

MAY 1 2 2003

## STIPULATED PROTECTIVE ORDER
## REGARDING CONFIDENTIAL INFORMATION

Plaintiff MS Produce, Inc. (MSP) and Defendants Burger King Corporation (BKC), Restaurant Services, Inc. (RSI), and Reinhart Foodservice, Inc. (Reinhart), through their respective counsel, stipulate to the entry of this Order for the protection of proprietary information, trade secrets, and other confidential technical, financial, or commercial information that may be produced or otherwise disclosed by any party or non-party to this action during the course of this proceeding.

1.      All documents, testimony and other information which have been, or will be, disclosed by the parties and by any non-parties during the course of this action, including documents, testimony and information disclosed during discovery, a hearing, a trial or in any other way, shall be handled in accordance with this Stipulated Protective Order.

26

2.    The following terms shall have the following meanings:

a)    "Documents" means all written, recorded or graphic matter and any other tangible material, including but not limited to interrogatory answers, demands to admit and responses thereto, and documents produced in this action by any party or non-party whether pursuant to discovery request, subpoena or by agreement.

b)    "Transcript" means the transcript of any testimony, and the testimony itself, given by or on behalf of the parties and any non-parties in this action.

c)    "Confidential Material" means any document, discovery response, testimony or transcript designated as "Confidential" pursuant to Paragraph 3, and all information contained therein or derived therefrom, including but not limited to any copies, excerpts or summaries thereof.

3.    Any party or non-party in this action may designate as "Confidential" any document, discovery response, testimony or transcript that it in good faith believes to contain:  (1) a trade secret, (2) confidential information entitled to protection under the Federal Rules of Civil Procedure or Rules of Evidence, or (3) commercial information, the disclosure of which would or might adversely affect business dealings and competitive positions.  A designation of confidentiality may be made by any party, whether or not that party produced the document or constituted the source of the testimony, and such designation shall be made (a) at the time of production, by stamping the word "CONFIDENTIAL" on each page of

the document or transcript to be accorded confidential treatment or (b) thereafter, by a written communication to all parties which specifically identifies the document and the particular pages therein to be treated as confidential.

4.     A transcript may be designated as confidential either (a) on the record or (b) by written communication mailed within thirty days after distribution of the transcript. All parties shall treat a transcript as confidential during that thirty day period. If a portion of a transcript is designated as "Confidential," the pages and lines of the transcript shall be identified with specificity. If confidential treatment is requested on the record, the court reporter shall mark the pages of the transcript containing the designated testimony with the designation "Confidential." When possible, portions of the transcript designated "Confidential" shall be segregated and bound separately from the remainder of the transcript.

5.     A "Confidential" designation pursuant to this Order shall not create any presumption with respect to the confidential, proprietary or trade secret nature of any such information. Each party shall retain the right to contest any "Confidential" designation by filing a properly noticed motion before this Court challenging the confidentiality of such material. On such motion, the person or party asserting confidentiality shall have the burden of proving that the Confidential Material is within the scope of protection afforded under any applicable law. In no event, however, shall any person or party disclose any Confidential Material without a prior ruling from the Court allowing such disclosure. The original designations shall remain effective until ten days after

3

entry of an order redesignating or de-designating the material and during the pendency of any writ or petition filed within the ten-day period.

6.     Access to Confidential Material shall be restricted to the following "Qualified Persons":

a)     the employees of any party to this action who are assisting counsel in the prosecution and defense of this case;

b)     third-party witnesses, whether or not in the context of a deposition or hearing, who previously authored, received, or otherwise became privy to the Confidential Material;

c)     counsel of record for the parties and supporting personnel employed by such counsel, including paralegals, legal translators, legal secretaries, data entry clerks, or law clerks.  Counsel are responsible for informing such personnel of the provisions of this Order and the necessity of maintaining the confidentiality of the information.

d)     independent experts, consultants, or advisors who are employed or retained by counsel for the parties to this action solely for the purpose of this litigation, including but not limited to proposed expert witnesses with whom counsel deems it necessary to consult concerning investigative, technical, financial or other aspects of this case, provided that these persons agree to be subject to the terms of this Stipulated Protective Order by signing a document in the form of Exhibit A (attached);

e) the United States District Court for the Northern District of Illinois, the United States Court of Appeals for the Seventh Circuit, the United States Supreme Court, and members of the jury in this case;

f) court reporters, stenographers and videographers;

g) witnesses attending or testifying at any deposition or court proceeding in this case, provided that they agree to be subject to the terms of this Stipulated Protective Order by signing a copy of the document attached as Exhibit A; and

h) any other person to whom the parties agree in writing or as the Court may order.

The parties agree that the employees of the court or the Clerk's office have no duty to maintain the confidentiality of any information contained in any papers filed with the Court, except as set forth in Paragraph 7 below. The parties further agree to retain all confidentiality statements signed by persons to whom Confidential Material was disclosed pursuant to this paragraph and to produce such agreements, if requested, to counsel for the designating party after the final disposition of this case, including appeals.

7. In applications and motions to the Court, all submissions of Confidential Material shall be filed with the Court in sealed enclosures pursuant to Local Rule 5.8 and shall be accompanied by a copy of this Order. The material shall be filed in an envelope bearing: (1) the title and case number of this action; (2) the

5

words "Restricted Document Pursuant to LR26.2"; (3) a statement substantially in the following form:

> THIS ENVELOPE CONTAINS MATERIALS SUBJECT TO A
> PROTECTIVE ORDER ENTERED IN THIS ACTION. IT IS NOT
> TO BE OPENED, NOR ARE ITS CONTENTS TO BE DISPLAYED,
> REVEALED, OR MADE PUBLIC, EXCEPT BY ORDER OF THE COURT;

and (4) the signature of the attorney of record filing the document. The submission shall indicate clearly which portions of the filed materials are designated as confidential. A party intending to rely upon or attach Confidential Material to dispositive motions shall either: (a) inform the party that originally designated the document 14 days prior to filing the motion or (b) file the documents separately under seal with the notation that they shall become public 14 days thereafter unless the party who designated the document obtains a court order sealing the documents.

8.     If any person or party subject to this Order receives a subpoena or other request for Confidential Material, that person or party shall *(i)* within 3 days notify all parties to the litigation and any third party who has designated Confidential Material that a subpoena requesting Confidential Material was received and *(ii)* that person or party shall not respond to the subpoena or other discovery request before its return date. If any person or party files a motion to intervene prior to the return date, then the Confidential Material shall not be produced until the court rules upon any and all objections to the subpoena or other discovery request and until any appeals from such ruling have been exhausted.

6

9.     Confidential Material may be used only for the purposes of the litigation of this action (including mediation, arbitration and appeals) and shall not be used for any business or other purpose except upon written consent of both the producing and designating party (if different) or by the order of Court.

10.     At the conclusion of this action, all Confidential Material, as well as any copies, excerpts or summaries thereof (including but not limited to excerpts or summaries in pleadings, briefs or memoranda, except attorney work product), shall be destroyed or, at the option of the person or party who designated such Confidential Material, returned to that person or party upon request. Counsel of record may retain one copy of any document containing Confidential Material filed with the court, but as to such documents the provisions of this Order shall remain in effect. Pursuant to Local Rule 26.2(e), any Confidential Material in possession of the court shall be placed in the public file 63 days after final disposition of this case, including appeals, unless the party designating the Confidential Material makes a written request or motion that the documents be returned or destroyed.

11.     The termination of the proceedings in this action shall not relieve any person or party to whom any Confidential Material has been disclosed from the obligations of this Order.

12.     Inadvertent production of any document or other information without a designation of confidentiality will not be deemed to waive a party's claim as to its confidential nature; provided, however, that the party later designating the document, transcript or other information as "Confidential" shall take whatever

7

steps are reasonably necessary to inform the other parties hereto of the "Confidential" designation. Except as provided in Paragraph 4, disclosure of such document or other information by any other person or party prior to receipt of such notification shall not be deemed a violation of the provisions of this Order.

13. Nothing herein shall preclude any person or party from applying to this Court, with notice to all parties, for a modification of this Order, or shall preclude any modification of this Order with the consent of all parties.

14. The parties and their respective law firms, by executing a copy of this Stipulated Protective Order, undertake to abide by and be bound by its provisions and to use due care to see that its provisions are known and strictly adhered to by those under its supervision or control.

Dated: March 13, 2003.

MS PRODUCE, INC.                          BURGER KING CORPORATION


By:_____             By:_____
John A. Sopuch, III, Esq.                 Andrew Eliot Porter, Esq.
Ellen G. Robinson, Esq.                   Christopher W. Carmichael, Esq.
Sopuch Arnett Higgins & Gaubert, LLP      Holland & Knight LLC
311 S. Wacker Drive, Suite 5600           55 West Monroe, Suite 800
Chicago, Illinois 60606                   Chicago, Illinois 6060
(312) 922-0900                            (312) 263-3600

steps are reasonably necessary to inform the other parties hereto of the "Confidential" designation. Except as provided in Paragraph 4, disclosure of such document or other information by any other person or party prior to receipt of such notification shall not be deemed a violation of the provisions of this Order.

13.     Nothing herein shall preclude any person or party from applying to this Court, with notice to all parties, for a modification of this Order, or shall preclude any modification of this Order with the consent of all parties.

14.     The parties and their respective law firms, by executing a copy of this Stipulated Protective Order, undertake to abide by and be bound by its provisions and to use due care to see that its provisions are known and strictly adhered to by those under its supervision or control.

Dated: March 13, 2003.

MS PRODUCE, INC.

By: _____
John A. Sopuch, III, Esq.
Ellen G. Robinson, Esq.
Sopuch Arnett Higgins & Gaubert, LLP
311 S. Wacker Drive, Suite 5600
Chicago, Illinois  60606
(312) 922-0900

BURGER KING CORPORATION

By: _____
Andrew Eliot Porter, Esq.
Christopher W. Carmichael, Esq.
Holland & Knight LLC
55 West Monroe, Suite 800
Chicago, Illinois  6060
(312) 263-3600

8

RESTAURANT SERVICES, INC.

REINHART FOODSERVICES, INC.

By:_____
David B. Goroff, Esq.
Martin J. Bishop, Esq.
Foley & Lardner
330 N. Wabash Ave., Suite 3300
Chicago, Illinois 60611
(312) 755-1925

By:_____
Eric J. Van Vugt, Esq.
Quarles & Brady
411 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
(414) 277-5000

**IT IS SO ORDERED.**

_____
The Honorable John W. Darrah, U.S.D.J.

9

RESTAURANT SERVICES, INC.

By: _____
David B. Goroff, Esq.
Martin J. Bishop, Esq.
Foley & Lardner
330 N. Wabash Ave., Suite 3300
Chicago, Illinois 60611
(312) 755-1925

May 8, 2003

REINHART FOODSERVICES, INC.

By: _____
Eric J. Van Vugt, Esq.
Quarles & Brady
411 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
(414) 277-5000

IT IS SO ORDERED.

_____
The Honorable John W. Darrah, U.S.D.J.

9

EXHIBIT A

## CONFIDENTIALITY AGREEMENT

I hereby acknowledge that I have read and am familiar with the terms and conditions of the Stipulated Protective Order Regarding Confidential Information in the case of <u>MS Produce, Inc. v. Burger King Corp. et al.</u>, No. 02-C-8372, currently pending in the United States District Court for the Northern District of Illinois. I hereby agree to be bound by and to comply with the terms of that Order and hereby consent to the jurisdiction of the Northern District of Illinois for the purpose of any proceedings relating to performance under, compliance with, or violation of that Order.

Name_____
      [PRINT]

Signature_____

Business Address_____

Residence Address_____

Dated: _____ ____, 2003

CH11 #203798 v1